UNITED STATES ex rel. SIEGEL v. BOARD OF LIQUIDATION OF CITY DEBT.

(Circuit Court, E. D. Louisiana. March 11, 1896.)

No. 12,478.

CONSTITUTIONAL LAW — JUDICIAL LEGISLATION — LOUISIANA CONSTITUTION AND STATUTES.

The Louisiana statute (Act No. 133 of 1880) relative to the funding of the debt of the city of New Orleans, as amended by Act No. 67 of 1884, excepts from its benefits the floating debt of the year 1879, and forbids the funding of such debt; and, though such exception should be held to be a violation of article 254 of the constitution of Louisiana of 1879, requiring the general assembly to enact legislation to liquidate the indebtedness of the city, the courts are without power to require the authorities of the city to disregard such exception, since to do so would virtually amount to enacting a law for the funding of a debt for which the legislature had refused to provide.

Petition filed December 31, 1895, by Henry Siegel, a citizen of Germany, praying for a writ of mandamus to the board of liquidation of the city debt to order the board to fund, or pay to relator, certain judgments at law heretofore obtained in this court against the city of New Orleans, aggregating the sum of $21,008.36. Upon a motion made by the defendant, at the close of the evidence, to direct a verdict against the relator, the court granted the same, for the following reasons.

Charles Louque and H. L. Lazarus, for relator.
Branch K. Miller, for defendant.

PARLANGE, District Judge. The relator heretofore obtained in this court several judgments against the city of New Orleans. The same were, in terms, made payable out of the revenues of the city of New Orleans for the year 1879, and out of the surplus of any subsequent years, in accordance with section 3 of Act No. 30 of the

extra session of the general assembly of this state held in 1877. These judgments were based upon floating debts or claims against the city created during, for, and against the year 1879. The relator prays for a mandamus ordering the board of liquidation of the city debt to fund or pay said judgments. Counsel for relator stated in open court that they abandoned any claim to have the judgments paid in this proceeding out of any surplus or revenues for the years subsequent to 1879, and they restricted the demand in this matter to a prayer to have the judgments funded into bonds by the board, or paid by the board with the proceeds of the sale of bonds. It was perfectly evident that relator could make no tenable claim to have his judgments paid out of such surplus, even if the pleadings be taken as setting forth and including a claim on relator's part to have his judgments paid out of such surplus, and even if such surplus had been proven to exist. It is true that section 3 of Act No. 30 of the extra session of 1877 declares that the "revenues of the several parishes and municipal corporations in this state, of each year, shall be devoted to the expenditures of that year; provided that any surplus of said revenues may be applied to the payment of the indebtedness of former years." But in a suit brought by this same relator the supreme court of the United States held (U. S. v. Thoman, 156 U. S. 353, 15 Sup. Ct. 378) that the provision as to the surplus is not mandatory, but only permissive, to the municipal corporations or parishes, and that the provision creates no contract right in a holder of indebtedness of former years which can be enforced by a mandamus. As the council of the city of New Orleans has never appropriated any part of the surplus (if such exists) towards the payment of relator's judgments, it is clear that the relator has no claim upon such surplus. This matter is therefore to be considered as a proceeding the sole object of which is to compel the board to fund relator's judgments, and give him bonds therefor, or to pay the judgments with the proceeds of the sale of the bonds which the board is authorized to issue. Article 254 of the constitution of Louisiana of the year 1879 makes it the duty of the general assembly to "enact such legislation as may be proper to liquidate the indebtedness of the city of New Orleans and apply its assets to the satisfaction thereof." The general assembly, proceeding to carry out this constitutional mandate, enacted, among other legislation, Act No. 133 of 1880, Act No. 58 of 1882, and Act No. 67 of 1884, which was amended by act No. 128 of 1890 in particulars which do not affect the present controversy. By Act No. 133 of 1880 the board of liquidation of the city debt was created. The board was authorized by that act to retire and cancel the entire valid debt of the city of New Orleans, by the sale of new bonds created by said act, and by the application of the proceeds to the purchase of the old obligations. But from the benefits of this scheme the act specially excluded all the floating debt created up to the date of the passage of the act, "whether represented by bonds of various classes or by judgments." Section 4 of Act No. 133 of 1880 makes it an offense punishable by fine and imprisonment for any member of the board to use any of the new bonds

created by the act, or the proceeds thereof, for purposes other than those contemplated by the act. Act No. 133 of 1880 failed of its purpose to cause the retirement of the city debt, and no bonds were issued under said act. In 1882 the general assembly of Louisiana enacted Act No. 58 of that year. That act recited that the city's creditors had indicated their willingness to settle claims equitably. It authorized the city, through the board, to extend for 40 years the payment of all outstanding bonds, except those known as "Premium Bonds," and to levy and collect a special tax to pay the interest on all bonds except the premium bonds. Under Act No. 58 of 1882, bonds for a large amount were issued. Act No. 133 of 1880 was amended by Act No. 67 of 1884. The amendment enlarged the scope of act No. 133 of 1880 by allowing the funding of the floating debt for years prior to 1879. Therefore, whereas under Act No. 133 of 1880 the board was forbidden from funding any of the floating debt prior to 1879, the only inhibition with regard to the fundable claims which now remains under Act No. 67 of 1884 is as to floating debt or claims created for and against the year 1879 and subsequent years. Section 3 of Act No. 133 of 1880 reads as follows:

"Sec. 3. Be it further enacted," etc., "that the board of liquidation of the city debt be and it is hereby authorized and empowered to retire and cancel the entire valid debt of the city of New Orleans, except the floating debt created up to the date of the passage of this act, whether represented by bonds of various classes or by judgments, either by the sale of the new bonds created under this act and appliance of proceeds to the purchase of such old obligations, or by exchange of the new bonds against said old obligations, on such terms as may be agreed upon between the holders of the said old obligations and the board of liquidation; provided the new bonds shall not be sold for a less sum than eighty cents in cash, on the dollar, and that no exchange shall be made at a greater rate than fifty cents in new bonds per dollar of the face value of the old obligation with interest accrued thereon; and provided further, that the entire issue of new bonds sold or exchanged, as above provided, shall not exceed in all ten millions of dollars."

Section 2 of Act No. 67 of 1884 reads as follows:

"Sec. 2. Be it further enacted," etc., "that section 3 of Act No. 133, approved April 10, 1880, be amended and reënacted so as to read: That the said board of liquidation of the city debt be and it is hereby authorized and required, and it is made the duty of the said board, to retire and cancel the entire debt of the city of New Orleans now in the form of executory judgments and registered, under the provisions of Act No. 5 of 1870, and that which hereafter may become merged into executory judgments and likewise registered; except the floating debt or claims created for and against the year 1879 and subsequent years; that it is the full extent and meaning of this act to apply solely the privileges thereof to executory judgments, at present rendered against such city, and to such floating debt or claims against said city for 1878, and previous years merged and to be merged into executory judgments, whether absolute or rendered against the revenues of any particular year or years, previous to the year 1879; that for the purpose of retiring and cancelling said judgment debt, the said board is authorized and required either to sell the bonds to be issued under this act at not less than their par value and apply the proceeds thereof to the payment of the said judgments, as above specified, or issue said bonds in exchange for said judgments."

As relator's judgments state, in terms, that they are to be paid out of the revenues of 1879, and out of the surplus of subsequent

years, and as relator is here seeking to have his judgments satisfied by means totally different from those which have been adjudged to him, the first inquiry which suggests itself is, on what law or right does the relator base his demand? As I understand it, the answer which is attempted to be made to that question, and the argument offered in behalf of relator, are as follows: In the case of Board v. Hart, 118 U. S. 136, 6 Sup. Ct. 995, the supreme court of the United States stated substantially, in general terms, that the holders of the floating debt of the city of New Orleans existing at the time of the passage of Act No. 133 of 1880, who have established the validity of their claims by judicial process, are protected by the provisions of the constitution of Louisiana adopted in 1879 from being excluded from sharing in the proceeds of the property and fund which by Act 133 of 1880 were, in terms, appropriated to purchase and retire the bonds of the city. With this declaration as a foundation, relator's counsel urge that the inhibition in Act No. 67 of 1884 against the funding of the class of indebtedness to which relator's judgments confessedly belong, is unlawful and of no effect, and that the inhibition and exception should be expunged by the court from Act No. 67 of 1884, and that the expurgated statute would then command the board to fund all the indebtedness of the city of New Orleans, without exception. In one essential particular, the Hart Case was precisely the converse of the case at bar. In the Hart Case, the board, after having, by a compromise, agreed to fund Hart's claim, refused to comply with its agreement to issue the bonds. Hart's claim was founded on contracts for municipal purposes made from 1871 to 1877, and had been merged into a judgment, and was conceded to belong to a class of claims which had been admitted to the benefits of the funding scheme by Act No. 67 of 1884. The board resisted solely on the ground that the acts of 1882 and 1884 conflicted as to the application of the property and funds of the city, and "that all the property of the city not dedicated to public use, and also the surplus of what was known as the 'Premium Bond Tax,' were pledged, under Act No. 58 of 1882, and by previous legislation, to the payment of other bonds of the city which were outstanding, and that the act of 1884, in so far as it directed a diversion of that property and fund, impaired the contract with the holders of those bonds, and was therefore unconstitutional and void." Therefore, in the Hart Case, the board of liquidation was refusing to obey the act of 1884, which plainly enjoined upon it to pay Hart's claim, while in the case at bar, relator seeks to have the board ordered to disobey the act of 1884, which, with equal plainness and with reiteration, forbids the board from paying relator's judgments. The statement made by the supreme court in the Hart Case, that the property of the city is the pledge of all its creditors, was a general declaration of the right and justice of the case, with which the court answered the board's contention, and upon which the court based its decision in ordering the board to obey the act of 1884. See, in this connection, State v. Board of Liquidation, 40 La. Ann. 398, 4 South. 122. There was no reference made in the Hart Case to the valid-

ity or invalidity of the exception made in the act of 1884 which excludes, in terms, relator's claims. No authority has been cited to me, nor have I discovered any, to the effect that the exception in the act of 1884 is invalid. It may well be that the general assembly had the right to make the exception. If, for instance, relator's claims were obnoxious to the constitutional amendment of 1874 (Acts 1874, p. 56) forbidding the city of New Orleans from increasing its debt, etc., relator might still have been entitled to judgments against the revenues; but it would not follow, necessarily, that he would be entitled to the benefits of the funding scheme. Article 254 of the constitution refers to the valid indebtedness of the city, and the supreme court, in the Hart Case, cannot be understood as having referred to any but lawful indebtedness. However, this consideration need only be briefly mentioned, because it is not essential to the decision of this case. It is clear that article 254 of the constitution of Louisiana is not self-operating. It is equally clear that if the general assembly had wholly disregarded its duty to carry out article 254, and had enacted no legislation whatever to that end, the court could not have created such an agency as the New Orleans board of liquidation, or provided the funding scheme for the relief of the relator. The relator would have been left to the means of payment which his judgments recite, and to such other modes of relief as he might have outside of article 254, and of the legislation enacted to carry it out. The difference between the supposed case and the case at bar is a difference in degree, but not in principle. The legal impossibility of ordering the board in this case to disobey the act of 1884 is the same as it would be for the court, in the total absence of legislation on the subject, to carry out itself the constitutional mandate. When the lawmaker gathers under one head, and in the form of a statute, several distinct and separate matters of legislation, which, though germane to each other, are not interdependent, a court may strike out one or more of the provisions which it adjudges to be in contravention of the organic law, and therefore null. In such a case, what remains of the statute may be enforced, because it was the will of the lawmaker that every one of the independent matters should be law. But this familiar doctrine does not apply to this case. The general assembly has clearly said, in the act of 1884, that it will not fund the class of claims to which relator's judgments belong. If (assuming that the exception in Act No. 67 of 1884 is invalid) I should strike out the exception, an extraordinary result would be produced. A statute would remain which would virtually order the board to fund relator's judgments. Who would be the author of that law? Surely, not the general assembly, for it has provided precisely the reverse. The court then would be the author of the law, and yet a court cannot legislate. I am clear that the relator cannot be given the relief which he prays for.